LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com


Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ANGELINA HARDING on behalf of herself and all others similarly situated, known and unknown,<br><br>Plaintiff,<br><br>v.<br><br>USA JAN, INC., an Illinois corporation, d/b/a IHOP, NEW ZAKS USA, INC., an Illinois corporation, d/b/a IHOP 1209, FLIP 3132, INC., an Illinois corporation, d/b/a IHOP, FLIPMEASTACK, INC., an Illinois corporation, d/b/a IHOP, SALAUDDIN JANMOHAMMED, an individual, VICTORIA JANMOHAMMED, an individual<br><br>Defendants. | Case No. ----------<br><br><br>Judge -------<br>Magistrate Judge ------<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## <u>COLLECTIVE ACTION COMPLAINT</u>

Now come Plaintiff Angelina Harding ("Plaintiff"), on behalf of herself and all other persons

similarly situated, and for her Complaint against Defendants USA Jan, Inc. ("USA Jan"), New

Zaks USA, Inc., ("New Zaks") Flip 3132, Inc. ("Flip 3132"), Flipmeastack, Inc. (Flipmeastack),

Salauddin Janmohammed ("S. Janmohammed"), Victoria Janmohammed ("V. Janmohammed"), state and allege as follows:

## I.    NATURE OF PLAINTIFF'S CLAIMS

1.     This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. 201, et seq. ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1, et seq. ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq. ("IWPCA") for Defendants' failure to pay Plaintiff, and other similarly situated employees, minimum wages, overtime wages, and earned wages. This case is brought as a collective action under 29 U.S.C. § 216(b). Plaintiff's consent form to act as the representative parties is attached as Exhibit C.

## II.    JURISDICTION AND VENUE

2.     Pursuant to 28 U.S.C. § 1331, this Court has federal-question jurisdiction over Plaintiff's FLSA claims, which arise under 29 U.S.C. § 216(b). In addition, this Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims derive from the same common conduct that led to violations of the FLSA; that is, the FLSA and state law claims all derive from the same common nucleus of operative facts. 28 U.S.C. § 1367.

3.     Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because the facts and events giving rise to Plaintiff's claims occurred in Illinois and within this judicial district.

4.     Jurisdiction and venue as to Defendants are proper in this Court pursuant to 28 U.S.C. §§ 1331, 1332, and 216(b) of the FLSA, 29 U.S.C. § 216(b).

## III.    THE PARTIES

### A.    Plaintiff

5.     Plaintiff Angelina Harding resides within this judicial district.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

6.     Defendants employed Plaintiff Harding as a server at their IHOP restaurants in the Chicagoland area between approximately October, 2017 and December 2019.  In addition to her duties as a server, Defendants forced Plaintiff Harding to perform many other kinds of labor, often improperly compensated or uncompensated.

**B.     Defendants**

7.     Defendants USA Jan, New Zaks, Flip 3132, and Flipmeastack are Illinois corporations doing business within this state and their principal places of business are located within this judicial district.

8.     Defendants USA Jan, New Zaks, and Flip 3132 own and operate IHOP franchise restaurants in the Chicagoland area. Defendant USA Jan does business as IHOP and is located at 4281 Cal Sag Road, Crestwood, Illinois 60445. Defendant New Zaks does business as IHOP and is located at 4120 N. Cicero Avenue, Chicago, Illinois 60661. Defendant Flip 3132 does business as IHOP and is located at 7601 S. Cicero Avenue, Chicago, Illinois 60652.

9.     Defendant Salauddin Janmohammed is the President and/or owner of Defendants USA Jan, New Zaks, and Flip 3132. Defendant Salauddin Janmohammed also serves as the Secretary for Defendants USA Jan, New Zaks, and Flip 3132.  Salauddin Janmouhammed exercises control over the Defendants' operations, including their labor policies and the payment of employees.

10.     Defendant Victoria Janmohammed is Salauddin Janmohammed's wife and is the Registered Agent for Defendants USA Jan, New Zaks, and Flip 3132 and exercises control over Defendants' operations, including their labor policies and the payment of the servers at the Defendants' restaurants.  Victoria Janmohammed is also the President, Secretary and Registered Agent for Flipmeastack.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

11.     Upon information and belief, Defendant Salauddin Janmohammed is the President and owner of approximately 20 other IHOP restaurants in Illinois, Indiana, Iowa, Michigan, and Wisconsin. Upon information and belief, Defendant Salauddin Janmohammed resides in and is domiciled within this judicial district.

12.     Defendant Flipmeastack provides restaurant management services to Defendants USA Jan, New Zaks, and Flip 3132, as well as the approximately 20 other IHOP franchise restaurants owned by Defendant Salauddin Janmohammed.

13.     During all relevant times, Defendant Flipmeastack has served as the Human Resources department for Defendants USA Jan, New Zaks, and Flip 3132, as well as the other IHOP restaurants owned by Defendant S. Janmohammed.  Flipmeastack is responsible for, among other things, promulgating and issuing employment policies including wage and hour policies, receiving and handling employee complaints, assigning District Managers to supervise the day-to-day operations at its restaurants, and authorizing its District Managers to make hiring and firing decisions and decisions related to the payment of employee wages.

## IV.     COMMON ALLEGATIONS – WAGE AND HOUR VIOLATIONS

14.     Plaintiff was employed by Defendants within the last three years before the filing of this lawsuit.

15.     Plaintiff Harding and other servers customarily and regularly received more than $30.00 per month in tips.

16.     Defendants elected to claim a tip credit by compensating servers based upon the lower statutory minimum wage rates for tipped employees and using tips to make up the difference between the lower minimum wage rates for tipped employees and the standard minimum wage rates that would otherwise be owed.

17.     Plaintiff and other servers employed by Defendants were also directed by Defendants to work, and did work, in excess of 40 hours per week.

18.     Defendants did not compensate Plaintiff and other servers at one and one-half times their normal hourly rate of pay for hours worked in excess of 40 in individual work weeks.

19.     In a willful attempt to avoid the payment of overtime wages, Defendants employed a variety of schemes to deprive their servers of their earned wages.

20.     Defendants regularly reduced the amount of compensable time worked by Plaintiff's other servers, and other applicable employees by "shaving" hours. Plaintiff's and other employees "clocked in" and "clocked out" through the computer cash register, but their compensable work hours were illegally reduced by Defendants and they were not paid for all hours worked.

21.     Defendants regularly unlawfully deducted time from the daily wages of Plaintiff and their other servers.

22.     Defendants required Plaintiff and their other servers to work through unpaid break times.

23.     Defendants USA Jan, New Zaks, Flip 3132, and Flipmeastack each employ more than one person for hire and pay wages to such employees.

24.     During all relevant times, Defendant S. Janmohammed possessed the authority to hire and fire Defendants' employees, to supervise and control employee work schedules or conditions of employment, to determine rate and method of payment, and to maintain employment records.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

25.    Defendants' employees have regularly handled, sold or otherwise worked on goods and materials that have been moved or produced for commerce, including, but not limited to, food products.

26.    Upon information and belief, Defendants USA Jan, New Zaks, Flip 3132, and Flipmeastack have individually and collectively earned annual gross revenues in excess of $500,000 during all relevant times.

27.    At all material times, Defendants have operated as a "single enterprise" within the meaning of Section 203(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose; namely, the operation of a chain of IHOP restaurants.

28.    At all material times: (1) Defendants were not completely disassociated with respect to the employment of Plaintiff and their other employees; and (2) Defendants were under common control.  In any event, at all relevant times, all Defendants were joint employers under the FLSA.

29.    Defendants are engaged in related activities, *i.e.* all activities which are necessary to the operation and maintenance of their chain of IHOP restaurants.

30.    Defendants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system, which is an economic unit directed to the accomplishment of a common business purpose.

31.    Defendants run each IHOP restaurant identically, or virtually identically, and Defendants' customers can expect the same kind of customer service regardless of the location.

32.    Defendants share employees between restaurant locations.

33. Defendants share common management between restaurant locations. Defendants' IHOP restaurants share common human resources and payroll services.

34. Defendants use the trade name "IHOP" at all of their restaurant locations.

35. Defendants' restaurants are advertised on the same website.

36. Defendants provide the same array of products and services to their customers at their IHOP restaurant locations.

37. Defendants' IHOP restaurants are open 24-hours a day. They do not sell alcohol. They primarily sell breakfast foods and other food items with low profit margins. As such, part of Defendants' business model relies on keeping labor costs extraordinarily low. These low labor targets and requirements, across all of Defendants' Denny's restaurants, have contributed to the wage violations alleged in this complaint.

## V.   FACTUAL ALLEGATIONS

### A.   Defendants operated an unlawful tip-credit system that harmed Plaintiff Harding and other servers

38. Defendants paid Plaintiff Harding a sub-minimum, tip-credit wage to work for Defendants.

39. Defendants pay their other servers a sub-minimum, tip credit wage to work for Defendants.

40. Plaintiff Harding does not recall Defendants informing her of the tip-credit provisions of the FLSA.

41. Despite the fact that the tip-credit wage is designed specifically, and only, for employees who receive tips for their work, Defendants regularly made Plaintiff and other servers perform non-tipped labor while receiving a sub-minimum, tip-credit wage.

42.     During the applicable statute of limitations, Defendants had a policy at all of their IHOP locations requiring servers to pay from their tips for customer walkouts.

43.     While paying Plaintiff Harding at the sub-minimum, tip-credit wage, Defendants required Plaintiff Harding to reimburse Defendants from their tips when customers walked out without paying for their meals, which they did.

44.     Defendants likewise required other servers to reimburse Defendants from their tips when customers walked out without paying for their meals, which they did.

45.     Defendants required Plaintiff Harding to work off the clock for no compensation.

46.     Defendants required other servers to work off the clock for no compensation.

47.     Because of their unlawful employment practices, Defendants have forfeited their right to claim a tip credit against the wages of Plaintiff and Defendants' other servers.

**B.      Defendants regularly forced Plaintiff Harding and other servers to perform labor for less than minimum wage or without compensation**

48.     Defendants instituted various schemes to make sure that they were paying Plaintiff and other similarly situated employees less than the minimum wage for all hours worked.

49.     Defendants instituted a policy that required Plaintiff Harding and other servers to perform "sidework." This was work that servers must complete before they end their shift and leave work.

50.     Defendants paid Plaintiff Harding and other servers the sub-minimum, tip-credit wage to do sidework, despite the fact that the duties involved in the sidework are entirely different and separate from those involved in serving, and do not involve tips (meaning Plaintiff and other servers should receive the minimum wage for sidework).

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

51.     Attached as **Exhibit A** are list of sidework duties posted in Defendants' IHOP locations.

52.     Sidework was a significant responsibility for Plaintiff Harding other employees that took at least one hour to complete at the end of shifts, after serving was over. Plaintiff Harding and other employees were paid the sub-minimum, tip-credit wage to do sidework which does not involve employees receiving tips.

53.     Defendants' sidework policy is clearly a scheme to unlawfully avoid paying Plaintiff Harding and other servers the minimum wage for work where minimum wage would be the correct compensation.

**C.      Defendants instituted a variety of unlawful schemes to avoid paying overtime wage**

54.     Defendants instituted various schemes to make sure that they were not paying Plaintiff and other similarly situated employees a proper and lawful overtime wage.

55.     Defendants instituted a policy at their various IHOP locations of not allowing employees, such as Plaintiff Harding to be clocked in more than 40 hours in a single workweek, as to avoid having to pay these employees an overtime wage.

56.     Instead of instituting a schedule that ensures that their employees will not work more than 40 hours in a single workweek, Defendants force employees to work more than 40 hours in a single workweek, and then use various schemes to make it appear that these employees worked 40 hours or less in a single workweek.

57.     Defendants only allow managers to clock employees out at their various IHOP locations; they do not allow employees, such as Plaintiff Harding, to clock themselves out. This scheme makes it difficult for Plaintiff and other employees to accurately report their work hours.

58.     Defendants consistently and regularly instruct their managers to clock employees like Plaintiff and other servers out when they reach 40 hours of work, even if these employees are still working. This denies employees their minimum wage and their overtime wage.

59.     Defendants consistently and regularly instruct their managers to go into the computers used to record the hours employees have worked, and to edit the hours of anyone who worked over 40 hours to 40 hours or less. This denies employees their minimum wage and their overtime wage.

**D.      Defendants forced Plaintiff Harding and other employees to pay for the businesses expenses out of their personal cash, wages, and/or tips**

60.     Defendants required Plaintiff Harding as well as other servers to bring their own personal money to work for their "bank" throughout their shifts.

61.     Defendants required Plaintiff Harding, as well as other servers, to make change for customers out of their own personal cash reserves, as opposed to using the business cash register.

62.     Defendants forced Plaintiff Harding, as well as other servers, to "prepay" for their customers' meals out of their own personal cash reserves, so that if a customer left the IHOP location without paying (this is called a "walk out"), the server would have to pay for the cost of the meal, and not Defendants.

63.     Defendants forced Plaintiff Harding, as well as other servers, to pay for customer walk outs out of their own personal cash reserves, wages, and/or tips.

64.     In the event that Defendants' credit card machine was not functioning when a customer attempted to pay for a meal utilizing a credit or debit card, Defendants required Plaintiff Harding, as well as other servers, to pay for the customer's meal.

65. As a result of Defendants' various unethical and unlawful schemes designed to get employees like Plaintiff Harding, as well as other servers, to pay for business expenses out of their own personal cash reserves, wages, and/or tips (which amounts to wage theft), employees often had to calculate what money they owed Defendants at the end of a workday.

66. Attached as **Exhibit B** is a section of the job specifications, as listed on snagajob.com, for the position of server at Defendants' IHOP locations, which states the specifications that servers must bring their own cash to work to make change and that servers must have guests pay their bill to the server, and not Defendants.

**E.** **Defendants forced Plaintiff and other employees to purchase their own uniform and work materials**

67. Defendants required Plaintiff Harding and other servers to wear uniforms at work, that is, a type or style of shirts and shoes with a specific or distinctive style, color and quality.

68. In addition to uniforms, Plaintiff Harding had to use specific accessories for work, such as a notepad and writing materials.

69. While paying Plaintiff Harding and other servers at the sub-minimum, tip-credit wage, Defendants forced Plaintiff Harding and other servers to purchase their own uniforms.

70. While paying Plaintiff Harding at the sub-minimum, tip-credit wage, Defendants forced Plaintiff Harding and other servers to purchase their own additional work accessories and materials.

71. Defendants' *de facto* deductions from Plaintiff Harding's wages for the cost of the required uniforms reduced Plaintiff Harding's and other servers' wages below the Illinois tip-credit minimum wage in one or more work weeks.

72.     Defendants' *de facto* deductions from other servers' wages for the cost of the

required uniforms and additional work accessories and materials reduced the other Tip-Credit

Employees' wages below the Illinois tip-credit minimum wage in one or more work weeks.

## VI.     FLSA COLLECTIVE DEFINITION AND ALLEGATIONS

73.     Plaintiff brings the First, Second, and Third Claims for Relief for violations of the

FLSA as a collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiff brings

the FLSA action on behalf of herself and all members of the following collective (the "FLSA

Collective") comprised of:

74.     **FLSA Collective**

All individuals in positions, job titles, job codes, job classifications, or job

descriptions of "Server" and all other similar nomenclature performing

substantially identical functions and/or duties as those outlined in this Complaint,

currently or formerly employed by Defendants' at any of their IHOP locations

who were paid an hourly wage subject to a tip credit at any point from three (3)

years prior to the commencement of this Action to the present.

75.     Plaintiff and the members of the FLSA Collective are similarly situated in that

they have substantially similar job classifications, job duties, job requirements, and were subject

to Defendants' common practices, policies, and schemes, of willfully and unlawfully deducting

business losses and shortages from the employees' wages, and forcing them to work off the clock

so that they will not earn minimum wage or earn overtime.

76.     The First, Second, and Third Claims for Relief for violations of the FLSA may be

brought and maintained as "opt-in" collective action pursuant to § 16(b) of the FLSA, 29 U.S.C.

§ 216(b), since the claims of the Plaintiff are similar to the claims of the members of the FLSA

Collective.

77. The names, addresses and telephone numbers of the members of the FLSA Collective are available from Defendants, and notice should be provided to the members of the FLSA Collective as soon as possible.

78. Plaintiff seeks to recover damages for the FLSA Collective for the three years prior to the initial filing of the Complaint applying all tolling periods.

## VII.    RULE 23 CLASS DEFINITIONS AND ALLEGATIONS

79. Plaintiff brings Claims for Relief for violation of Illinois' wage and hour laws as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiff bring these claims on behalf of themselves and all members of the following class (the "Illinois Class") comprised of:

80. **IWPCA Class**

All individuals in positions, job titles, job codes, job classifications, or job descriptions of "Server" and all other similar nomenclature performing substantially identical functions and/or duties as those outlined in this Complaint, currently or formerly employed by Defendants' at any of their IHOP locations in Illinois who were paid an hourly wage subject to a tip credit at any point from ten (10) years prior to the commencement of this Action to the present.

81. **IMWL Class**

All individuals in positions, job titles, job codes, job classifications, or job descriptions of "Server" and all other similar nomenclature performing substantially identical functions and/or duties as those outlined in this Complaint, currently or formerly employed by Defendants' at any of their IHOP locations in Illinois who were paid an hourly wage subject to a tip credit at any point from three (3) years prior to the commencement of this Action to the present.

**A. Rule 23 Allegations**

   **a. Numerosity (Rule 23(a)(1)).**

82.     The Illinois Classes are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis allege, that Defendants employed hundreds of persons who satisfy the definition of the Illinois Classes.

### b.  Existence of Common Questions of Law and Fact (Rule 23(a)(2)).

83.     Common questions of law and fact exist as to the Plaintiff and the members of the Illinois Classes including, but not limited to, the following:

a.  Whether Defendants unlawfully failed to pay members of the IMWL Class the minimum wage, in violation of the Illinois Minimum Wage Law ("IMWL");

b.  Whether Defendants unlawfully failed to pay members of the IWPCA Class proper compensation in violation of the Illinois Wage Payment and Collection Act ("IWPCA");

c.  Whether Defendants unlawfully failed to keep and maintain accurate and true records of the hours worked by members of the Illinois classes as required by applicable law; and

d.  Whether Defendants unlawfully deducted business costs, uniform costs, accessory and work material costs, prior earned wages, and shortages in violation of the IWPCA and/or IMWL.

e.  The damages sustained and the proper measure of restitution recoverable by members of the Illinois Class.

### c.  Typicality (Rule 23(a)(3)).

84.     Plaintiff's claims are typical of the members of the Illinois Class' claims. Plaintiff, like other members of the Illinois Classes, were subjected to Defendants' illegal

scheme to maximize profits by depriving their employees of the basic minimum wage and overtime compensation, as well as other schemes.

### d.  Adequacy (Rule 23(a)(4)).

85.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Illinois Classes. Plaintiff retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.

### e.  Injunctive and Declaratory Relief (Rule 23(b)(2)).

86.     Class certification of the Rule 23 claims is appropriate pursuant to Rule 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to the members of the Illinois Classes, making appropriate declaratory relief with respect to the members of the Illinois Classes as a whole.

### f.  Predominance and Superiority of Class Action (Rule 23(b)(3)).

87.     Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to members of the Illinois Classes predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices illegally deprived Plaintiff and all similarly situated employees of wages; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual members of the Illinois Classes are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

88. Plaintiff intends to send notice to all members of the Illinois Classes to the extent required by Rule 23.

## VIII. CLAIMS FOR RELIEF

### Count I

**Failure to Pay Minimum Wages – Fair Labor Standards Act (On Behalf of Plaintiff and the Collective Action Class)**

89. Plaintiff realleges and incorporate by this reference each of the preceding and foregoing paragraphs as if fully set forth herein.

90. Plaintiff Angelina Harding has been an "employee" as defined in the FLSA, 29 U.S.C. § 203(e)(1), and was not exempt from the minimum wage provisions of the FLSA, 29 U.S.C. § 206, 213.

91. Throughout Plaintiff's employment, Defendants employed other servers who were similarly not exempt from the minimum wage provisions of the FLSA.

92. Plaintiff and other servers were "tipped employees" within the meaning of 29 U.S.C. § 203(t).

93. During all relevant times, Defendants have each been an "employer" as defined in the FLSA, 29 U.S.C. § 203(d). 54. Defendants USA Jan, New Zaks, Flip 3132, and Flipmeastack each are an enterprise within the meaning of the FLSA, 29 U.S.C. § (r)(1), and each has operated as an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A). Defendants further constitute a single enterprise and joint employers under the FLSA.

94. Pursuant to 29 U.S.C. § 206, Plaintiff Angelina Harding, as well as other servers and employees, was entitled to be compensated according to the applicable minimum wages under the FLSA.

95.     Defendants did not inform Plaintiff Angelina Harding or other servers of the tip credit subsection, 29 U.S.C. § 203(m).

96.     Defendants violated the minimum wage provisions of the FLSA by requiring Plaintiff and similarly-situated Tip-Credit Employees to perform non-tipped work that is unrelated to their tipped occupation, while paying them less than minimum wage, such as: cleaning bathrooms, sweeping, mopping, or deck scrubbing floors, washing dishes, and cleaning the restaurant.

97.     Defendants violated the minimum wage provisions of the FLSA by requiring Plaintiff and similarly situated servers to perform non-tipped work that, even if it was related to their tipped occupation, was performed more than occasionally or part of the time. Instead, Defendants required such related non-tipped labor to be performed for unreasonable amounts of time that are not contemporaneous to direct customer service duties and for amounts of time that exceed 20 percent of Plaintiff's and similarly situated servers' time worked in one or more individual workweeks.

98.     Defendants violated the minimum wage provisions of the FLSA by requiring Plaintiff and other similarly situated servers to reimburse the restaurant from their tips for customer walkouts and cash drawer shortages while paying them sub-minimum, tip-credit wages.

99.     Defendants violated the minimum wage provisions of the FLSA by requiring Plaintiff and similarly situated servers to work off the clock while paying them the sub-minimum tip-credit wage rate.

100.    Defendants' resultant failure to pay minimum wages was a violation of the Fair Labor Standards Act, 29 U.S.C. § 206.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

101.    Defendants' violation of the Fair Labor Standards Act by refusing to pay Plaintiff and similarly situated servers minimum wages was willful and not in good faith.

**Count II**
**Failure to Pay Overtime Wages – Fair Labor Standards Act (On Behalf of Plaintiff and the Collective Action Class)**

102.    Plaintiff realleges and incorporate by this reference each of the preceding and foregoing paragraphs as if fully set forth herein.

103.    Plaintiff has been an "employee" as defined in the FLSA, 29 U.S.C. § 203(e)(1), and was not exempt from the overtime wage provisions of the FLSA, 29 U.S.C. § 207, 213.

104.    Throughout Plaintiff's employment, Defendants employed other servers who were similarly not exempt from the overtime wage provisions of the FLSA.

105.    Pursuant to 29 U.S.C. § 207, for all weeks during which Plaintiff and other servers worked in excess of 40 hours, Plaintiff and other servers were entitled to be compensated at a rate of one and one-half times their regular hourly rate of pay.

106.    Defendants violated the overtime pay provisions of the FLSA by requiring Plaintiff and other servers to work off the clock, which resulted in them working more than 40 hours in one or more individual workweeks during which they were not paid, or not paid all, of their earned overtime compensation as required by the FLSA. 29 U.S.C. § 207.

107.    Defendants' violation of the Fair Labor Standards Act by refusing to pay Plaintiff's overtime wages was willful and not in good faith.

**Count III**
**Violation of the Fair Labor Standards Act – Illegal Tip Retention (On Behalf of Plaintiff and the Collective Action Class)**

108.    Plaintiff realleges and incorporate by this reference each of the preceding and foregoing paragraphs as if fully set forth herein.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

109.    Plaintiff Harding and other servers were "tipped employees" within the meaning of 29 U.S.C. § 203(t).

110.    Defendants violated 29 U.S.C. § 203(m) by not allowing Plaintiff and other servers to retain all off their tips.

111.    Defendants required Plaintiff Harding as well as other servers to bring their own personal money to work for their "bank" throughout their shifts.

112.    Defendants required Plaintiff Harding, as well as other servers, to make change for customers out of their own personal cash reserves, as opposed to using the business cash register.

113.    Defendants forced Plaintiff Harding, as well as other servers, to "prepay" for their customers' meals out of their own personal cash reserves, so that if a customer left the IHOP location without paying (this is called a "walk out"), the server would have to pay for the cost of the meal, and not Defendants.

114.    Defendants forced Plaintiff Harding, as well as other servers, to pay for customer walk outs out of their own personal cash reserves, wages, and/or tips.

115.    In the event that Defendants' credit card machine was not functioning when a customer attempted to pay for a meal utilizing a credit or debit card, Defendants required Plaintiff Harding, as well as other servers, to pay for the customer's meal.

116.    As a result of Defendants' various unethical and unlawful schemes designed to get employees like Plaintiff Harding, as well as other servers, to pay for business expenses out of their own personal cash reserves, wages, and/or tips (which amounts to wage theft), employees often had to calculate what money they owed Defendants at the end of a workday.

117.    Defendants' violation of the Fair Labor Standards Act by failing to allow Plaintiff and other servers to retain all of their tips was willful and not in good faith.

**<u>Count IV</u>**
**Violation of the IWPCA – Unpaid Wages**
**(On Behalf of Plaintiff and the IWPCA Class)**

118.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

119.    This Count arises from Defendants' practice of failing to pay Plaintiff and the IWPCA Class at the wage rate agreed to by the parties.

120.    During the course of her employment, Plaintiff had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

121.    Other similarly situated employees likewise had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

122.    Defendants had a practice of not paying Plaintiff and the Rule 23 Classes at the rate agreed to by the parties. For example, Defendants took "kickbacks" from the wages of Plaintiff and the Rule 23 Class, and failed to properly reimburse Plaintiff and the Rule 23 Classes for the expenses they incurred while serving food on Defendants' behalf.

123.    Defendants also took unlawful deductions from the wages of Plaintiff and the Rule 23 Class for the cost of uniforms.

124.    Plaintiff and the Rule 23 Classes were entitled to be paid for all time worked at the rate agreed to by the parties.

125.    Defendants' practice of failing to pay Plaintiff and the Rule 23 Classes at the rate agreed to by the parties violated the IWPCA.

126. Plaintiff and the Rule 23 Class are entitled to recover all the unpaid wages in violation of the IWPCA made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit. *See* 73 ILCS 5/13-206.

127. As a result of Defendants' violations of the IWPCA, Plaintiff and the IWPCA Class are entitled to unpaid wages, statutory damages provided under the IWPCA, reasonable attorneys' fees, and costs.

### Count V
### Violation of the IWPCA – Unlawful Deductions
### (On Behalf of Plaintiff and the IWPCA Class)

128. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

129. This Count arises from Defendants' practice of making unlawful deductions from the wages of Plaintiff and the Rule 23 Class.

130. During the course of his employment, Plaintiff had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

131. Other similarly situated employees likewise had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

132. Defendants had a practice of making unlawful deductions from Plaintiff's earned wages without authorization from Plaintiff in writing as required by the IWPCA. Such deductions: (a) were not required by law; (b) were not to Plaintiff's benefit; (c) were not in response to a valid wage assignment or wage deduction order; and (d) were not made with the express written consent of Plaintiff, given freely at the time the deductions were made.

133. Defendants likewise had a practice of making unlawful deductions from members of the Rule 23 Classes without their authorization.

134.     Defendants' practice of making unlawful deductions from the earned wages of Plaintiff and the Rule 23 Classes violated the IWPCA.

135.     Plaintiff and the Rule 23 Classes are entitled to recover all the unlawful deductions made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit. *See* 73 ILCS 5/13-206.

136.     As a result of Defendants' violations of the IWPCA, Plaintiff and IWPCA Class, are entitled to unpaid wages and unlawful deductions, statutory damages provided under the IWPCA, reasonable attorneys' fees, and costs.

<u>**Count VI**</u>
**Violation of the Illinois Minimum Wage Law – Minimum Wages – (On Behalf of Plaintiff and the IMWL Class)**

137.     Plaintiff realleges and incorporates by this reference each of the preceding and foregoing paragraphs as if fully set forth herein.

138.     Plaintiff Harding has been an "employee" under the IMWL, 820 ILCS § 105/3(d), and was not exempt from the minimum wage provisions of the IMWL, 820 ILCS § 105/4.

139.     Throughout Plaintiff's employment, Defendants employed other servers who were similarly not exempt from the minimum wage provisions of the IMWL.

140.     Plaintiff and other servers have been tipped employees within the meaning of 820 ILCS 105/4(c).

141.     During all relevant times, Defendants have each been an "employer" as defined in the IMWL, 820 ILCS § 105/3(c).

142.     Pursuant to 820 ILCS § 105/4, Plaintiff Harding, as well as other servers, was entitled to be compensated according to the applicable minimum wages under the IMWL.

143.    Defendants failed to allow Plaintiff Harding, as well as other servers, to retain all of their tips.

144.    Defendants' resultant failure to pay minimum wages was a violation of the IMWL, 820 ILCS § 105/4.

145.    Defendants' violation the Illinois Minimum Wage Law was willful and not in good faith.

**Count VII**
**Violation of the Illinois Minimum Wage Law – Overtime Wages – (On Behalf of Plaintiff and the IMWL)**

146.    Plaintiff realleges and incorporates by this reference each of the preceding and foregoing paragraphs as if fully set forth herein.

147.    Plaintiff has been an "employee" under the IMWL, 820 ILCS § 105/3(d), and is not exempt from the overtime wage provisions of the IMWL, 820 ILCS § 105/1 et seq.

148.    During the course of Plaintiff's employment, Defendants employed other servers who were similarly not exempt from the overtime wage provisions of the IMWL.

149.    Pursuant to 820 ILCS § 105/4(a), for all weeks during which Plaintiff and other servers worked in excess of 40 hours, Plaintiff and other servers were entitled to be compensated at a rate of one and one-half times their normal hourly rate of pay.

150.    Defendants' failure and refusal to pay overtime wages for hours worked in excess of 40 hours per week was a violation of the maximum hour provisions of the IMWL, 820 ILCS § 105/4(a).

151.    Defendants' violation the Illinois Minimum Wage Law willful and not in good faith.

**Count VIII**

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

**Illinois Wage Payment and Collection Act (On Behalf of Plaintiff and the IWPCA Class)**

152.    Plaintiff realleges and incorporates by this reference each of the preceding and foregoing paragraphs as if fully set forth herein.

153.    820 ILCS § 115/9 states:

"Except as hereinafter provided, deductions by employers from wages or final compensation are prohibited unless such deductions are (1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; (4) made with the express written consent of the employee, given freely at the time the deduction is made"

154.    The deductions that Defendants routinely and consistently made from Plaintiff's and other similarly situated servers' pay (for uniforms, accessories and materials, walk outs, malfunctioning credit card machines, and so on) were neither required by law, to the benefit of the employee, in response to a valid wage assignment or wage deduction order, nor made with the express consent of the employee at the time of the deduction.

155.    Defendants' violation the Illinois Wage Payment and Collection Act was willful and not in good faith.

## IX.    PRAYER FOR RELIEF

156.    WHEREFORE, Plaintiff, on behalf of herself and all members of the Plaintiff Classes she seeks to represent, prays for relief as follows:

a.    For an order certifying that the First, Second, and Third Claims for Relief of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

opt-in FLSA Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims;

b. For an order certifying that the Fourth, Fifth, and Sixth, Seventh, and Eighth Claims for Relief be maintained as a class action pursuant to Rule 23 on behalf of the members of the Illinois Classes who were employed by Defendant during the Illinois Class Periods and that notice of the pendency of this action be provided to members of the Illinois Classes.

c. A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

d. Appropriate equitable relief to remedy Defendants' violations of state law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

e. For an award of unpaid Federal minimum wages for each hour worked as required by the FLSA, 29 U.S.C. § 206, and parallel Illinois minimum wages;

f. All unpaid overtime as calculated by the applicable provision of the FLSA, 29 U.S.C. § 207 and parallel Illinois overtime wages;

g. All appropriate state and federal statutory penalties, including liquidated damages;

h. Attorneys' fees and costs of suit, including expert fees and fees pursuant to Ohio law and as permitted by the FLSA;

i. Such other and further relief as this Court deems just and proper.

## X. <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial by jury on all causes of action and claims with respect to which she has a state and/or federal constitutional right to a jury trial.

Respectfully submitted,

s/ *Michael L. Fradin*
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com


By: /s/ *James L. Simon*
James L. Simon (*pro hac vice* forthcoming)
THE LAW OFFICES OF SIMON & SIMON
5000 Rockside Road
Liberty Plaza – Suite 520
Independence, OH 44131
Telephone: (216) 525-8890
Email: james@bswages.com

By: /s/ *Clifford P. Bendau, II*
Clifford P. Bendau, II (*pro hac vice* forthcoming)
Christopher J. Bendau (*pro hac vice* forthcoming)
BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, Arizona 85060
Telephone AZ: (480) 382-5176
Telephone OH: (216) 395-4226
Email: cliff@bswages.com